IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-633-WKW [WO] |
| HARLEYSVILLE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

### **I.  INTRODUCTION**

Before the court is Defendant Harleysville Insurance Company's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. # 8.)  Plaintiff filed a response in opposition (Doc. # 12) to which Defendant filed a reply brief.  After careful consideration of the allegations, arguments of counsel, and applicable law, the court finds that Harleysville Insurance Company's Rule 12(b)(6) motion is due to be denied.

### **II.  JURISDICTION AND VENUE**

In this removed action, subject matter jurisdiction is proper on the basis of diversity jurisdiction.  *See* 28 U.S.C. §§ 1332(a), 1441(a).  Personal jurisdiction and venue are not contested.

## III.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Further, as a general rule, the scope of the court's review "must be limited to the four corners of the complaint." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). A court may not consider extrinsic evidence unless its authenticity is undisputed and the evidence is "central to the plaintiff's claim." *Id.* Otherwise, "[i]f matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion." *Id.* (citing Fed. R. Civ. P. 12(d)).

## IV.  BACKGROUND

### A.  <u>The Allegations of the Operative Complaint</u>

The underlying facts, as Plaintiff Safeco Insurance Company of Illinois ("Safeco") pleads them, are as follows: On September 20, 2018, Heidi Lee ("Lee"), a partner at Jackson Thornton & Co., was involved in a motor vehicle accident "during the scope of her employment." (Doc. # 6, at 3 (Am. Compl.).) The vehicle that Lee was driving was covered by her personal automobile insurance policy that she obtained through Safeco ("the Safeco Policy"), which provided up to $500,000 in liability coverage. (Doc. # 6, at 3.) The Safeco Policy contained a subrogation clause, which provided that, "[i]f [Safeco] makes a payment under [the Safeco Policy] and the person for whom payment was made has a right to recover damages from another person, entity, or organization[,] [Safeco] shall be subrogated to that right." (Doc. # 6, at 3.)

Lee's vehicle also was insured under Jackson Thornton's business automobile coverage policy ("the Harleysville Policy") because she was "conducting employment-related business at the time of the accident." (Doc. # 6, at 4.) This policy, which was issued by Harleysville Insurance Company ("Harleysville"), carried a liability limit of $1,000,000. (Doc. # 6, at 4.) The Harleysville Policy covered "Non-Owned Autos" pursuant to a policy provision that defined "Covered Autos" to include "[o]nly those 'autos' you do not own, lease, hire, rent or borrow

3

that are used in connection with your business. This includes 'autos' owned by your 'employees,' [or] partners . . . while used in your business or personal affairs." (Doc. # 6, at 4.) At the time of the accident, Jackson Thornton did not own, nor was it hiring, renting, or borrowing Lee's vehicle, and Lee was using the automobile "in connection with and in furtherance of Jackson Thornton & Co., P.C.'s business affairs." (Doc. # 6, at 3.)

Both the Safeco Policy and Harleysville Policy included "Other Insurance" provisions. The Safeco Policy's "Other Insurance" provision reads as follows:

> If there is other applicable liability insurance available[,] any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.

(Doc. # 6, at 5.) The Harleysville Policy's "Other Insurance" provision reads as follows:

> For any covered "auto" you own, this coverage provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance.
> 
> . . .
> 
> When this coverage form and any other coverage form or policy covers the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all coverage forms and policies covering on the same basis.

(Doc. # 6, at 5.)

Safeco notified Harleysville of the accident and corresponding claim, but Harleysville did not participate in any of the claim proceedings. (Doc. # 1-1, at 4.) Safeco points to a coverage letter that Harleysville issued to Lee, acknowledging that the Harleysville Policy provided coverage for the accident on an excess basis over the Safeco Policy. (Doc. # 6, at 5.)

On August 29, 2019, Safeco entered into a "Settlement and Release" agreement ("the Agreement") with the motorcyclist who asserted claims against Lee over the accident. The Agreement included a total release and discharge of all liability for both Lee and Jackson Thornton for the sum of $200,000. (Doc. # 6, at 6.) Safeco paid the $200,000 to the motorcyclist and sought proportional contribution from Harleysville in the amount of $133,333.33 (two-thirds of the $200,000), which Harleysville has refused to pay. (Doc. # 6, at 5–6.)

### B. Procedural History

On August 4, 2020, Safeco sued Harleysville in an Alabama state court, seeking a declaratory judgment for equitable contribution and equitable and/or contractual subrogation from Harleysville in the amount of $133,333.33. (Doc. # 1-1, at 4–7.) Harleysville removed the case to this court on diversity grounds on August 28, 2020.

The original complaint alleged that Lee was an insured (rather than that her vehicle was insured) under the Harleysville Policy. Harleysville maintained that Lee

5

was not an "insured" pursuant to the Harleysville Policy, and counsel for Harleysville advised counsel for Safeco of this fact. (Doc. # 8, at 2.) Accordingly, Safeco amended its complaint to state that Lee was acting in the course of her employment as opposed to classifying Lee herself as an "insured." (Doc. # 6, at 3.) Harleysville argues that this revision between the original complaint filed in an Alabama state court (Doc. # 1-1) and the Amended Complaint filed in this court (Doc. # 6) constitutes a concession by Safeco that Lee was not an "insured" covered by the Harleysville Policy, and accordingly seeks to dismiss Safeco's claims pursuant to Rule 12(b)(6). (Doc. # 8, at 3.) Harleysville's Motion to Dismiss (Doc. # 8) appended emails between counsel, which Safeco points out raises Rule 56 summary judgment considerations. (Doc. # 12, at 5.)

## V.   DISCUSSION

For the following reasons, Harleysville's Motion to Dismiss is due to be denied. The ultimate issue is whether the Safeco and Harleysville Policies covered the same "insurable interest, subject matter, and risk" as one another. Based on a reading of the facts in the light most favorable to the nonmovant (Safeco) as they relate to applicable caselaw, Safeco has pled sufficient factual matter to plausibly show that the two policies did so; Safeco can therefore overcome a 12(b)(6) motion to dismiss.

This opinion will first discuss the Rule 56 considerations, and then proceed to the merits of Harleysville's motion.

A. **Conversion to a Rule 56 motion for summary judgment is not necessary.**

The scope of a court's review of a motion to dismiss pursuant to Rule 12(b)(6) "must be limited to the four corners of the complaint." *Speaker*, 623 F.3d at 1379. A court may not consider extrinsic evidence unless its authenticity is undisputed and the evidence is "central to the plaintiff's claim." *Id.* Otherwise, "[i]f matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted to a Rule 56 summary judgment motion." *Id.* (citing Fed. R. Civ. P. 12(d)). A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010). In other words, the court is free to ignore the extraneous material altogether so that the motion is not converted into a Rule 56 motion for summary judgment. *Id.*

Harleysville attached several supplemental documents to its Motion to Dismiss, thereby introducing material outside the four corners of Safeco's complaint. (Docs. # 8-1, 8-2.) Because these documents are "matters outside the pleadings," this would ordinarily warrant conversion of the Motion to Dismiss into a motion for summary judgment.

7

However, after duly reviewing Harleysville's Motion to Dismiss, the court finds that the attached documents do not have significant enough bearing on Safeco's claims *vis-à-vis* the standards of *Twombly* and *Iqbal* to warrant consideration in weighing the pending Motion to Dismiss. Therefore, pursuant to *Harper*, the court exercises its discretion to ignore these extraneous materials altogether and to not convert the motion into a Rule 56 motion for summary judgment.

**B.     It is irrelevant that Lee was not an insured under the Harleysville Policy.**

Harleysville argues that because Safeco amended its complaint to remove the allegation that Harleysville owed coverage to Lee as an insured, instead basing its claim on a theory of vicarious liability through Jackson Thornton, Safeco effectively concedes that Lee was not an insured, and is therefore not entitled to equitable contribution from Harleysville. (Doc. # 8, at 3.) However, pursuant to Alabama law, whether Lee herself was insured by the Harleysville policy is not dispositive of the issue of equitable contribution. The controlling issue is whether the parties' insurance contracts covered the same insurable interest, subject matter, and risk.

Pursuant to Alabama law, one insurer is not entitled to equitable contribution from another "merely upon showing that an insured is covered by two insurance policies." *Pa. Nat'l Mut. Cas. Ins. Co. v. Progressive Direct Ins. Co.*, 2015 WL 5719178, at *9 (N.D. Ala. 2015). Instead, "the two policies must insure against the same risk, but they must also provide coverage for the same insurable interest."

8

*Employers' Mut. Cas. Ins. Co. v. Hughes*, 780 F. Supp. 2d 1204, 1208 (N.D. Ala. 2011). In other words, equitable contribution requires "the same insurable interest, subject matter, and risk." *Pa. Nat'l*, 2015 WL 5719178, at *9 (citing *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 561 (Ala. 1994)).

Harleysville points to two Alabama Supreme Court decisions—*Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 553 (Ala. 1994) and *United States Fire Ins. Co. v. Hodges*, 154 So. 2d 3 (Ala. 1963)—to support the notion that because Lee was not a listed insured on the Harleysville Policy, Safeco is not entitled to relief.

In *Hall*, Nationwide Mutual Insurance Company insured the manager of a building, who was an additional insured under a policy issued by Alfa Mutual Insurance Company ("Alfa") to Friedlander Realty, Inc., which owned the building in question. 643 So. 2d at 553. After Nationwide defended and settled a claim arising from a fire at the building, it sued Alfa to recover defense and indemnity payments. *Id.* at 554. The court concluded that Nationwide was entitled to contribution from Alfa because both the Nationwide and Alfa policies provided primary insurance to Friedlander. *Id.* at 561.

Harleysville contrasts *Hall* with *United States Fire Insurance Co. v. Hodges*, in which the Alabama Supreme Court suggested that equitable contribution and the applicability of multiple insurance policies' "other insurance" provisions apply only if the policies in question cover the same insured(s). 154 So. 2d at 3. In *Hodges*,

9

three insurance policies were involved, two of which contained provisions that the court denominated "other insurance" clauses, but which were of the type frequently referred to as "pro rata" clauses. *Id.* at 4. The trial court ignored the "pro rata" clauses because the two policies did not cover the same interest, subject matter, risk, and insured. *Id.* at 5. On appeal to the Alabama Supreme Court, United States Fire contended that liability should be prorated between the policies at issue. *Id.* The court affirmed, ignoring the "pro rata" clauses, saying:

> It will be noted that each of the co-insurance provisions in the two policies says that 'if the Assured has other insurance' and 'if the insured has other insurance.' The 'Assured' in the boat policy was Auto Electric, a corporation; the 'insured' in the homeowners policy was Ed Hodges, his wife and their daughter. Certainly the insureds in both policies were not the same.

*Id.* at 7. Harleysville argues that pursuant to *Hodges*, because Lee was not an insured under the Harleysville Policy, Harleysville does not owe equitable contribution to Safeco.

However, the Alabama Supreme Court expressly overruled *Hodges*' suggestion that equitable contribution and the applicability of multiple insurance policies' "other insurance" provisions apply only if the policies in question cover the same "insured(s)." *State Farm Mut. Auto. Ins. Co. v. Auto-Owners Ins. Co.*, 252 So. 2d 631 (Ala. 1971). The court cited a number of other cases following *Hodges* where the courts allocated liability among different insurers despite the policies at issue not covering the same insureds, and concluded that this aspect of *Hodges* was incorrect

and overruled it. *Id.* ("[W]e are now convinced that the Hodges [sic] holding with which we are concerned here is too narrow and should not be followed. That holding is hereby overruled."). *See also id.* at 636 (citing, *inter alia*, *Am. Mut. Liab. Ins. Co. v. Milwaukee Ins. Co. of Milwaukee*, 218 So. 2d 129 (1969) (ordering pro-rata contribution of insurance coverage for automobile accident among different insurers—one of whom provided garage liability coverage and the other "comprehensive liability"—despite the fact that the policies covered different insureds)).

The *State Farm* court also cited *State Farm Mutual Auto Insurance Co. v. General Mutual Insurance Co.*, 210 So. 2d 688 (Ala. 1968), in overturning *Hodges*. *State Farm*, 252 So. 2d at 636. That case involved a dispute between two insurers who offered liability coverage on a motor vehicle accident. State Farm, the appellant, covered the driver individually under a so-called "Operator's" policy. *State Farm*, 210 So. 2d at 690, 694. The other insurer, General, covered a family poultry company that owned the driver's vehicle under a commercial policy. *Id.* at 690. Even though these policies covered different named insureds, because each policy provided liability coverage for the accident, the court applied each policy's "other insurance" clauses. *Id.* Concluding that each policy featured "excess" other-insurance clauses, the court deemed them "mutually repugnant" or irreconcilable. *Id.* at 694. Following this determination, the court applied the "*Lamb-Weston*" rule

11

of apportioning loss between two concurrent insurers according to "the ratio which the limits of the policies bear to the total coverage. . . ." *Id*. at 696 (quoting *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co*., 346 P.2d 643, 647 (Ore. 1959)).

In short, there is ample Alabama case law to rebut Harleysville's argument that it has no obligation due to Lee not being an insured under the Harleysville Policy. The Alabama Supreme Court has expressly rejected the requirement that corresponding insurance policies carrying "Other Insurance" clauses (such as the Harleysville and Safeco Policies) must cover the same insureds. Alabama case law merely requires such policies to cover the same interest, subject matter, and risk as one another.

The question, then, is whether Safeco has pled sufficient factual matter to sustain a plausible claim that the policies in question cover the same interest, subject matter, and risk.

**C.**     **The Safeco and Harleysville Policies cover the same insurable interest, subject matter, and risk.**

Safeco has pled sufficient factual matter to sustain a claim that the policies in question cover the same interest, subject matter, and risk.

The facts of this case are nearly identical to those of *Hall*, on which Harleysville relies in its Motion to Dismiss. Just as the Nationwide and Alfa policies in *Hall* both insured Friedlander, both the Safeco and Harleysville Policies insured

Lee's vehicle. The Supreme Court of Alabama affirmed the trial court's granting Nationwide a judgment for "a pro rata contribution to the amount Nationwide paid to settle the claims against [the insured]." *Hall*, 643 So. 2d at 562. This is what Safeco seeks in the current case.

*Hall* does not dictate that contribution is only available where policies cover the same insured; it states that when multiple insurers cover "the same insurable interest, subject matter, and risk [at the same basis], they share liability in accordance with the proportion that the limits of each policy bear to the total limit of insurance applicable to the loss." *Id.* at 561. As Safeco points out, the reason that the question of whether the insurance policies in *Hall* covered the same insured arose was due to the specific terms of the "Other Insurance" provisions at issue in that case. In *Hall*, both Alfa's and Nationwide's "Other Insurance" provisions purported to apply only in situations where other collectible insurance was "available to the insured." *See id.* at 558 (quoting Alfa's "Other Insurance" provision); *id.* at 560–61 (quoting Nationwide's "Other Insurance" provisions). In contrast, neither Safeco nor Harleysville's "Other Insurance" provisions limit their application or scope only to outside insurance coverage or proceeds that are "available to the insured."

Safeco directly insured Lee's vehicle. As Safeco has alleged, the Harleysville Policy covered "Non-Owned Autos" pursuant to a policy provision that defined "Covered Autos" to include "[o]nly those 'autos' [Jackson Thornton] do[es] not

13

own, lease, hire, rent or borrow that are used in connection with [Jackson Thornton's] business. This includes 'autos' owned by [Jackson Thornton's] 'employees,' [or] partners . . . while used in [Jackson Thornton's] business or personal affairs." (Doc. # 1-1, at 2–3) (alterations added.) Because, as alleged, Lee owned her vehicle and was acting within the scope of her employment for Jackson Thornton at the time of the accident, her vehicle was a "Non-Owned Auto" covered by the Harleysville Policy. Taken as true, these facts plausibly allege that both Safeco and Harleysville insured Lee's vehicle at the time of the accident, including its liability insurance, making the two policies cover the same interest, subject matter, and risk as one another.

For these reasons, Safeco has pled sufficient factual matter, taken as true, to support its claims for equitable contribution and subrogation. Harleysville's Motion to Dismiss is therefore due to be denied.

## VI. CONCLUSION

For the foregoing reasons, it is ORDERED that Harleysville's Motion to Dismiss (Doc. # 8) is DENIED.

DONE this 7th day of January, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE